## STATE *ex rel.* BAIN, Treasurer, *v.* SEABOARD & R. R. Co.

### (*Circuit Court, E. D. North Carolina.* September 20, 1892.)

1. RAILROAD COMPANIES—TAXATION—CONTRACT.
   The charter of the Roanoke Railroad Company, granted in 1847, (Laws N. C. 1846–47, c. 87,) provides in section 24 that all the property of the company shall be vested in the stockholders in proportion to their shares, and "the same shall be deemed personal estate, and shall be exempt from any public charge or tax whatsoever for the term of 15 years; and thereafter the legislature may impose a tax not exceeding 25 cents per annum per share on each share of the capital stock whenever the annual profits thereof shall exceed six per cent." Section 38 requires the president of the company to make to the legislature an annual report of receipts and expenditures. *Held*, that the right of the legislature to impose the charge did not depend upon the taxing power, but upon the charter contract by which it granted the franchise, and that the tax was properly payable by the corporation, and not by the individual shareholders.

2. SAME—LACHES.
   As the right to the tax depended entirely on contract, the fact that the state never demanded any tax until 1891 did not debar it from then assessing the tax for each year from 1866, from which time the profits had exceeded 6 per cent. per annum. If laches could be imputable to the legislature in failing to make demand for so long a time, it was excused by the fact that no report of the company's business was ever made, as required by section 38 of the charter, until 1889.

3. SAME—EFFECT OF CONSOLIDATION.
   The Roanoke Railroad lay entirely in North Carolina, but terminated at Margarettsville, on the border of Virginia. At the same time there existed a Virginia corporation, the Seaboard & Roanoke Company, owning a road lying mostly in that state, but extending to Margarettsville. In 1849 the legislatures of the two states consolidated the two corporations, the North Carolina act declaring (Laws 1848–49, c. 83, § 12) that the stockholders of the Seaboard & Roanoke Company were thereby constituted stockholders in the Roanoke Company, with the same rights, powers

privileges, and franchises as if they had subscribed an equal amount in the Roanoke Company. *Held*, that this act operated to increase the shares of the Roanoke Company by all the shares of the Seaboard & Roanoke Company, and that the latter company became subject to the burden stipulated for in the charter of the former, and was bound to pay the tax on all its shares, irrespective of the proportion of its property lying in North Carolina, or of the citizenship of its stockholders.

At Law. Action by the state of North Carolina, on the relation of Bain, public treasurer, to recover a tax alleged to be due from the Seaboard & Roanoke Railroad Company. Judgment for plaintiff.

*Atty. Gen. Davidson, C. M. Busbee, F. H. Busbee,* and *Armistead Jones,* for plaintiff.

*L. R. Watts* and *Batchelor & Devereux,* for defendant.

SEYMOUR, District Judge. This action was brought by the public treasurer of North Carolina to recover certain taxes alleged by him to be due by the defendant corporation under its acts of incorporation and under chapter 323, § 38, of the Public Laws of North Carolina of 1891. By the last-mentioned act, the general assembly imposed a tax upon defendant company of 20 cents per annum upon each share of the capital stock of the defendant for the years from 1862 to 1892, both inclusive. The Seaboard & Roanoke Railroad Company is in North Carolina the successor of the Roanoke Railroad Company, chartered in 1847. Laws N. C. 1846–47, c. 87. Section 24 of said chapter 87 contains the following provision:

"All machines, wagons, vehicles, and carriages purchased, as aforesaid, with the funds of the company, etc., and all the works of the said company constructed or property acquired under the authority of this act, and all profits which shall accrue from the same, shall be vested in the respective stockholders of the company forever, in proportion to their respective shares, and the same shall be deemed personal estate, and shall be exempt from any public charge or tax whatsoever for the term of fifteen years; and thereafter the legislature may impose a tax not exceeding 25 cents per annum per share on each share of the capital stock whenever the annual profits thereof shall exceed six per cent."

At the time of the passage of this act the Roanoke Railroad Company had an actual capital of $200,000, with the privilege of increasing the same to $400,000; and its line of road extended from Weldon, N. C., to Margarettsville, in the same state, but on the borders of the state of Virginia, a distance of a little less than 20 miles. At the same time, there existed in Virginia a corporation owning a line of railroad from Portsmouth, in that state, to Margarettsville, about 60 miles in length. By the act of 1848–49, c. 83, (Laws N. C.,) the stockholders of this corporation, known as the Seaboard & Roanoke Railroad Company, were constituted stockholders in the Roanoke Railroad Company. Section 12 of said act reads as follows:

"Sec. 12. Be it enacted by the general assembly of N. C.," etc., "that, from and after the time when this act shall take effect, the stockholders of the S. & R. R. R. Co., a corporation incorporated by the legislature of Va. by an act dated Feb., 1847, and other acts, be, and they are hereby, constituted stockholders in the Roanoke R. R. Co., incorporated by the legislature of N.

C. by act dated Jan. 15, 1847, with the same rights, powers, privileges, and franchises as if they had subscribed an equal amount in the said Roanoke R. R. Co.; and all tolls, franchises, rights. privileges, powers, and profits then or at any time thereafter owned, acquired, or enjoyed by the stockholders of said Roanoke R. R. Co. shall belong to the stockholders of the said S. & R. R. Co. in proportion to the number of shares by each of them owned; and, from and after the time when this act shall take effect, all property owned, acquired, or enjoyed by either of said corporations shall be taken to be the joint property of the stockholders, for the time being, of the two corporations."

The only other statutory provision necessary to be considered is section 38 of the first-cited act, the one chartering the Roanoke Railroad Company. It reads as follows:

"Sec. 38. That it shall be the duty of the president of the said company on the first week in December of each and every year to transmit to the general assembly a correct statement of the receipts and expenditures of said company during the year preceding."

The case has been heard upon bill and answer, and certain admitted facts. The material facts admitted are the following: (1) The company did not earn 6 per cent. for the years 1862 to 1865, inclusive. (2) The number of shares in the consolidated company known as the Seaboard & Roanoke Railroad Company was from 1866 to 1868, inclusive, 8,682 shares; for 1869, 11,293 shares; for 1870, 12,314 shares; for 1871, 12,784 shares; for 1872, 12,784 shares; for 1873, 12,801 shares; for 1874, 12,998 shares; for 1875, 13,404 shares; for 1876, 13,494 shares; for 1877, 13,504 shares; for 1878, 13,504 shares; for 1879, 12,996 shares; for 1880, 12,996 shares; for 1881, 13,013 shares; for 1882, 13,017 shares; for 1883, 13,022 shares; for 1884, 13,028 shares; for 1885–1891, inclusive, 13,029 shares. (3) Of this number 261 shares only are owned by citizens and residents of North Carolina. (4) That no tax was ever imposed on the Seaboard & Roanoke Railroad Company, under the provisions of its charter, until the one in question. (5) That the Seaboard & Roanoke Railroad Company never filed with the legislature any report of its receipts and disbursements, as required by the charter, until November, 1889. (6) Since 1866 the company has earned upwards of 6 per cent. on its shares.

The contention of the defendant is (1) that the entire tax is in violation of the contract with the state created by the charter of 1847; (2) that, if defendant be liable at all for the tax, it is only liable for a *pro rata* portion thereof, proportionate to the amount of its mileage in North Carolina; (3) that the tax, the right to levy which is reserved by the charter of the Roanoke Railroad Company, is one on the stockholders of the company, and can only be levied on resident stockholders, and upon them, not for past years, but only for the year immediately preceding the levying of the tax.

It would be difficult, perhaps, to sustain the tax sued for as a property tax, under the constitution of North Carolina, or apart from its contract character as a tax on the franchise of the road. Possibly the imposition for which the state sues might be described as something due the state, but not in the nature of a tax at all. The right of the state to

collect the amount sued for does not grow out of its power to tax, but out of its power to charge a price for the franchise granted by it. It is not a tax on the property of the road or of the shareholders, because it is not measured by the value of the property or of the shares. It is an imposition annexed to the franchise as a royalty for the grant; the contract price to be paid by the company or its shareholders for the franchise granted to them. *Bank of Commerce* v. *New York City*, 2 Black, 620; *Attorney General* v. *Bank*, 4 Jones, Eq. 287. This being the nature of the plaintiff's right, no technical rules embarrass the questions in the case. They all depend on the ordinary rules relating to the construction of contracts. These questions are—*First*. Is the imposition properly placed on the company, instead of the private stockholders? *Second*. On what stock is the 20 cents a share properly chargeable? *Third*. For what years can it be charged?

1. The statute, (Acts 1846–47, c. 87, § 24,) after vesting the property of the corporation in its stockholders, and declaring it personalty, provides that "the same"—that is, the property of the corporation— shall be exempt from any public charge for the term of 15 years, and that thereafter the legislature may impose a tax "not exceeding twenty-five cents per annum per share on each share of the capital stock whenever the annual profits thereof shall exceed six per cent." It is evident, in view of the above phraseology, and of the fact that the tax is upon the privilege of the franchise, that it rests upon the company as a company, and is properly chargeable upon the corporation. The rate of 25 cents per share is mentioned to fix the amount of the charge, not the persons from whom it is collectible.

2. No definite number of shares of stock is mentioned as the number which shall regulate the imposition upon the company. By the original charter, the number of shares authorized was from 2,000 to 4,000. It is reasonable to suppose that, in fixing a compensation for the franchise to be paid as a rental during the entire existence of the defendant's charter, it was contemplated that the amount to be paid should increase as the capital of the company should increase, However that may be, the contract is plain enough. The tax is upon each share of the capital stock. When the legislatures of Virginia and North Carolina consolidated the Roanoke with the Seaboard & Roanoke Railroad, it was expressly provided that the shares of the Roanoke Railroad should be increased by the shares of the Seaboard & Roanoke Railroad Company. The same act which gives the defendant immunity from all other taxation than that of 25 cents on each share of its stock places each share of that stock in the condition of the shares of the original corporation. The Seaboard & Roanoke Railroad stands in the shoes of the Roanoke Railroad Company, with its privileges and its contracts. The legal effect of the act of 1849 is the same as if it expressly provided that every share of the Seaboard & Roanoke Railroad should after the term of 15 years be liable to the tax of 25 cents a share. No other effect can be given to the whole act, and, in particular, no other construction can result from the words, "the stockholders of the S. & R. R. R. Co. are

hereby constituted stockholders in the Roanoke R. R. Co." The number of shares of the defendant company cannot be increased without its consent, but, when increased by such consent, the proportional rate of compensation chargeable against the company on account of the franchise is increased in accordance with the terms of the original charter. The view which the court takes of the imposition *sub lite* disposes of the contention of defendant that the tax can be imposed only on the stock of stockholders residing in the state, or only on that proportion of the stock which would equitably represent the one-fourth part of defendant's line which lies within the limits of North Carolina. As has been said, in substance, the tax is not upon the shares, but is only measured by the number of the shares. It is not upon the property of defendant. It is therefore immaterial where the shareholders reside, and what property defendant owns in North Carolina. The tax is a charge agreed upon between the parties,—the price put by the state upon the franchise purchased by defendant,—and has naught to do with anything other than the contract itself.

3. The tax is collectible for every year since 1866. No time runs against the state. No possible presumption of payment exists. If laches could be attributable to the legislature in not demanding the 25 cents for the years since 1866, as each year expired, under any state of circumstances, it could not under the facts of this case, for it is admitted that defendant never until 1889 made the report of its receipts and disbursements required by its charter, and which might have formed the basis of the tax. Some weight would be due to the objection that a past tax upon the stockholders of a corporation cannot be reasonably collected of the corporation. In such case the tax is only collected of the stockholders through the corporation. The corporation can justly be required to pay its stockholders' taxes if it has funds of theirs, which it can withhold to the extent of the tax so paid, and not otherwise. The profits of a corporation are supposed to be divided annually. The stockholders are a perpetually changing body. But this tax is not one upon the stockholders. It is one on the corporation itself. If it is said that there is injustice in collecting now, after the lapse of 25 years, the tax of 1866, when perhaps all the stock of defendant company has changed owners since that time, the answer is, *first*, the contract allows it; and, *second*, each purchaser of stock bought his shares with the unpaid burden of this charge resting on them.

The judgment of the court is that plaintiff recover the amount of the tax according to the admissions in the pleadings and facts agreed, and costs.